### BROWN *et al.* v. WAKEMAN.

*(City Court of New York, General Term.   December 29, 1891.)*

:1. LANDLORD AND TENANT—RENT—EVICTION BY LANDLORD.
    By the provisons of the New York city consolidation act relating to unsafe buildings, (Laws 1882, c. 410, § 507, as amended by Laws 1885, c. 456, and Laws 1887 c. 566, and sections 509 and 510,) "all notices directing anything to be done in a building deemed unsafe or dangerous shall be issued by the superin- tendent of buildings, and shall have his name affixed thereto," and the mode of enforcing compliance with such notice is prescribed.  Plaintiffs received a letter from the chief clerk in the department of buildings stating that steps should be taken to prevent a wall of plaintiffs' buildings from becoming dangerous, and that the superintendent desired to see the representatives of the owners at an early day.    Soon afterwards plaintiffs filed an application to make alterations in the building, which was allowed, and thereafter erected four brick walls, for the pur- pose of strengthening the front wall, which had bulged, and in doing so took away from apartments occupied by defendant, as their tenant, one or more rooms, and · rendered his other rooms almost uninhabitable.  *Held*, that this work was voluntary on the part of plaintiffs, and amounted to an eviction of defendant from a substan- tial portion of the premises, and suspended the whole rent, until the whole prem- ises were restored to defendant.

:2. APPEAL—REVIEW—MISCONDUCT OF COUNSEL—ERROR CURED.
    A reference by defendant's counsel, in summing up, to a fact not in issue, but testified to by defendant without objection, and which might prejudice plaintiffs' case, may be cured by a statement by the trial judge, in his charge to the jury, sufficiently strong to remove the effect of such reference.

Appeal from trial term.

Action by Gerald R. Brown and John N. Golding against Abram Wakeman :for rent.   Judgment for defendant.   Plaintiffs appeal.   Affirmed.

Argued before EHRLICH, C. J., and FITZSIMONS, J.

*McCall & Arnold,* for appellants.   *Wakeman & Campbell,* for respondent.

FITZSIMONS, J.   In May, 1889, the plaintiffs, as lessors, rented to defend- _ant, as lessee, an apartment in the Southerland Flats, 709 Madison avenue, in the city, for the period of one year commencing May 1, 1889, the defend- _ant then being in possession thereof under a former letting.   It appears that :in October, 1889, the plaintiffs commenced certain alterations and repairs in

these premises, and completed the same. The time when these repairs were completed the jury evidently believed was in or about May, 1890. They consisted principally in the erection of four brick walls commencing at the foundation and running throughout the building up to the roof, and took away from the suite of apartments occupied by the defendant one or more rooms, and perhaps deprived him of the use of others. The position of these four bricks walls are shown in a diagram in the printed case. It appears that they were built for the purpose of strengthening the front wall of said premises, which had bulged, and was probably dangerous. During the progress of this work the defendant was, as before stated, deprived of the use of some part of the demised premises, and the part he occupied was rendered almost uninhabitable because of the nature of the work being done. The rent of the demised premises was $100 per month, and this action is to recover the rent from November 1, 1889, to May 1, 1890, viz., $600. Upon the trial the jury rendered a verdict for defendant, from which the plaintiffs appeal.

The main contention of the plaintiffs upon this appeal is predicated upon the theory that the defendant is not relieved from the payment of the rent provided for in the lease because he remained in possession of the demised premises during the continuance of the work just described, and that all such repairs and alterations were made in obedience to an order of the department of buildings. The plaintiffs of course must admit that, if their repairs and alterations were commenced and completed of their own volition, their entry upon and into defendant's apartments without right for the purpose of carrying out the same was an eviction, and that for the time defendant was so evicted from a substantial portion of the demised premises the rent of the whole suite ceased. Therefore the first question presented for our decision is, "did the plaintiffs voluntarily make the repairs and alterations complained of, or were they made by them under and by virtue of an order of the building department?" The alterations and repairs indicated were done by plaintiffs because the building in question was deemed unsafe or dangerous, and it is only because of that fact (that the building was deemed unsafe or dangerous) that the department of buildings would be authorized to require the plaintiffs to do such alterations or repairs. The law controlling the department of buildings in matters concerning alleged unsafe buildings in this city, and the course of procedure to be adopted and followed by said department in such cases, is contained in sections 507, 509–513, c. 410, Laws 1882, as amended by chapter 456, Laws 1885, and chapter 566, Laws 1887. Section 507 provides "that all notices directing anything to be done in any building deemed unsafe or dangerous shall be issued by the superintendent of buildings, and shall have his name affixed thereto." Section 509 provides that said notice shall require the owner, or any person having an interest in such premises, to make the same safe or secure as directed by said superintendent, and that the person so served shall at once certify to said superintendent his assent or refusal to comply with the terms of said notice. Section 510 provides that, in case the person served with said notice consents to comply with the terms thereof, he shall be allowed until next day at 1 o'clock P. M., when he must commence to make the premises safe. It also provides that certain proceedings may be taken by said department in case he fails or refuses to comply with said notice. Sections 511–513 contain provisions which do not affect this action, and are merely cited so as to present all of the sections of said act which apply to cases of this character. The notice required by section 507 is the initiatory step or proceeding officially taken by the superintendent of buildings in declaring a building in this city to be unsafe or dangerous. Until said notice is issued as in said section provided, every building must be deemed safe and sound, including the premises in question. I am therefore of the opinion that, unless the record of this case shows that such a notice was issued, it must be considered that the alterations and repairs herein re-

ferred to were voluntarily done by plaintiffs, and were not done in obedience to an order of the department of buildings, and were consequently the act of plaintiffs, and not the act of the municipality. I have searched in vain the record submitted for the notice required by section 507. The nearest approach to such a notice, and upon which the plaintiffs apparently rely in their contention that the work was done because ordered by said department of buildings, is a letter addressed to E. E. McCall, Esq., signed by John R. Shields, chief clerk in said department, in which it is stated that Mr. Brady, the superintendent of buildings, had a survey made of the premises in question, and found that the gable wall had bulged 2½ inches since 1885, and that steps should at once be taken to prevent the wall from becoming dangerous, and for this purpose Mr. Brady desired to see the representatives of the owners at an early day. This letter is dated October 8, 1889, and is apparently the only communication ever issued concerning said premises, so far as the appeal-book discloses. It does not declare the building to be dangerous or unsafe, but anticipates the happening of such an event. It is not the notice required by said section 507, and evidently was not intended as such by the superintendent. On October 17, 1889, an application was filed by the alleged owner of said premises to make desired alterations, which was allowed, and the work referred to was commenced and completed thereunder. It is clear to my mind that the work done by plaintiffs was done because of the suggestion contained in the letter of October 8th, and which at that time was not regarded by the plaintiffs or the department of buildings as a proceeding taken under the sections of the law above referred to, although a failure to comply with such suggestion might lead to an enforcement of the law. Therefore, unless the defendant consented and permitted the plaintiffs to use the part of the demised premises which it is admitted they did use to do the work in question, there was in law an eviction from a substantial portion of the said premises, and consequently a suspension of the whole rent until the whole premises were again restored to defendant. With reference to that question the testimony seems to be all in defendant's favor, he claiming that the eviction commenced in June, ceased about October 1st, was again renewed about October 31st, and continued until the May following, and that defendant wrote plaintiffs concerning, and complained against, their intrusion; that he received no written answer to his letter, but that subsequently Hamilton, plaintiffs' agent, stated to defendant's wife that the rent would be made all right, but finally stated, through their attorneys and personally, that they were not liable to defendant for an injury done, and that there was no eviction in law, because they were required by the municipality to do said work. As above indicated by me, I think this notion was wrong, and that they performed the work of their own accord. The jury by their verdict also determined that such eviction continued until May 1, 1890.

I do not think that the reference by defendant's counsel, in summing up, to the Equitable Life Insurance Company, prejudiced plaintiffs' cause. I believe the jury decided against the plaintiffs on the merits of the case. Besides, the remark of the trial justice, made immediately after such statement was made, and his charge, were strong enough to remove any prejudice that any of the jurors may have conceived against plaintiffs because of the said statement. Besides this, the defendant testified that the plaintiff Golding or Mr. Hamilton told him that the Equitable Life was the owner of the said premises. This testimony is not disputed; therefore the statement is based upon testimony in the case, the admission of which was not objected to, and therefore it was proper for counsel to refer to it in summing up. I cannot find any objections taken by plaintiffs which are meritorious enough to reverse the judgment herein. Judgment affirmed, with costs.